# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

ALEXANDER ALHOVSKY,                                    Civil Action

                                    Plaintiff,         07 CIV 7628 (CM)

                    v.                                 ECF CASE

THOMAS RYAN, NEW YORK CITY POLICE                      **AMENDED COMPLAINT**
DEPARTMENT DETECTIVES "1-5," NEW YORK                  **and JURY DEMAND**
CITY POLICE DEPARTMENT OFFICERS "1-10,"
JACK T. LINN, STEVE SIMON, RAY BROWN,
BARBARA BROWN, the NEW YORK CITY
DEPARTMENT OF PARKS AND RECREATION, and
the CITY OF NEW YORK,

                                    Defendants.
-----------------------------------------------------------------------x

        Plaintiff Alexander Alhovsky, through his attorneys the Erlanger Law Firm PLLC, alleges

as and for a Complaint against defendants:

### PARTIES, SUBJECT MATTER JURISDICTION, and VENUE

1.  Plaintiff is a citizen of the United States and resides in New York County.

2.  The City of New York ("NYC") is a municipality of the State of New York.

3.  The New York Police Department ("NYPD") is an NYC agency.

4.  Defendant Thomas Ryan is a detective employed by NYPD.

5.  Defendants NYPD Detectives "1-5" are employed by the NYPD.

6.  Defendants NYPD Officers "1-10" are employed by the NYPD.

7.  Defendant NYC Department of Parks & Recreation ("Parks Department") is an NYC

agency.

8.  Defendant Jack T. Linn ("Linn") is employed by the Parks Department as Assistant

Commissioner.

9.  Defendant Steve Simon ("Simon") is employed by the Parks Department as Chief of

Staff, Manhattan.

     10.  Defendant Raymond Brown is employed by the Parks Department, as Deputy Inspector, Parks Enforcement Patrol, Manhattan.

     11.  Defendant Barbara Brown is an employee of the Parks Department, Manhattan and reports to Linn.

     12.  Jurisdiction arises under 42 U.S.C. §1983.  The Court has pendent jurisdiction over plaintiff's state-law based claims.

     13.  Venue arises in this district under 28 U.S.C. §1391.

## FACTUAL BACKGROUND

     14.  Plaintiff is a Russian-Jewish emigree and has been a resident of the upper Eastside in Manhattan for the past 18 years.  He is a well-known visual artist who wears a clown costume and paints faces and bodies (see attached) and shapes balloons into animal forms in Central Park and at private children's parties.

     15.  Plaintiff inflates the balloons using a Majiloon battery-powered balloon pump ("balloon pump"), which he purchased from the Majiloon company over the internet.

**1.**     **Unconstitutional and Illegal Conduct by the NYPD**

     16.  On or about June 21, on his way back from Central Park, plaintiff stopped at the Starbucks located at1128 Third Avenue in Manhattan ("Starbucks"), close to his apartment, for a coffee.  Because he had a difficult day, plaintiff inadvertently left his back-up rainbow-striped balloon pump in its "fanny pack" on a chair.  After discovering the pack and the balloon pump, a Starbucks employee apparently called the NYPD because he or she believed the balloon pump to be a bomb.

17.  The NYPD Bomb Squad took possession of the balloon pump and sprayed it with a chemical to neutralize any electrical charge.  They further applied "chemical enhancement" to pick up "possible latent prints, hair fiber, and trace analysis" to determine who had left the device at Starbucks.

18.  Plaintiff was not difficult to locate and follow around because he was a 18-year resident of the area and frequently wore a clown costume while on his way to and from children's parties and Central Park.  He is also well known to Starbucks's employees.

19.  Over the next several days, the NYPD and FBI conducted an investigation and surveillance of plaintiff.

20.  On June 26, 2006, the Bomb Squad vouchered the balloon pump as a "hoax device." Upon information and belief, the NYPD and FBI further determined before June 28, 2006 that the balloon pump was, in fact, an electronic air pump or similar device.

21.  Notwithstanding that the NYPD and the FBI knew that the balloon pump was not a bomb or even a hoax device, they turned plaintiff in the unknowing and hapless victim of a "take down a terrorist" training exercise.

22.  On June 28, 2006, NYPD and the FBI set up a several block "security zone" between 1st and 2nd Avenue and 65th and 68th Streets.   Traffic was controlled into and pedestrians were being evacuated from the security zone.

23.  At around 3:00 p.m., plaintiff was riding his bike home in his clown costume.  He was transporting his primary balloon pump in its fanny pack and his large artist's portfolio case. Once he bicycled inside the "security zone," he was viciously tacked from behind, repeatedly kicked in the side, kneed in the kidneys, grabbed by the hair, and slammed up against the window

3

of a Chirping Chicken at1219 First Avenue by several NYPD police officers and detectives.

24.   Plaintiff's pants were pulled down around his ankles, he was handcuffed, and then forced into an NYPD vehicle where he remained for approximately 40 minutes.

25.   NYPD cut open plaintiff's the balloon pump fanny pack and portfolio case. The balloon pump was left lying on the sidewalk and the area was cordoned off with yellow police tape as if it had been a crime scene (indeed NYPD's conduct at the location was criminal).

26.   Plaintiff was then driven to the 19th Precinct, where he was confined alone in a large room with mirrors for three to four hours. The time was only interrupted for a total of 15 to 20 minutes by Ryan and another detective, who played a "good cop/bad cop" routine. The other detective harassed plaintiff by telling him that he was he worse trouble than if he had committed murder or rape - you are going for life; the detective did not even give plaintiff a hint as to why he had been arrested.

27.   Plaintiff told an FBI agent, who also entered the room, that the balloon pump was a balloon pump.

28.   After the three to four hours, plaintiff was taken out of the room and brought to a computer linked to the internet. He showed the FBI agent the Majiloon website.

29.   After his interrogation and confinement at the 19th Precinct, Ryan and the FBI agent asked plaintiff if they could come to his apartment and search it. Plaintiff asked for a warrant and they replied with the false and manipulative statement that it would only take them "10 minutes" to obtain one so plaintiff should agree to the search without more. They and two police officers escorted plaintiff from the police station to his apartment at around 9:00 p.m. They forced plaintiff to wait outside his apartment for about an hour while they searched it. Nothing

4

of interest related to the arrest was found.

     30.  Ryan and the FBI agent then brought plaintiff back to the 19th Precinct where he filled out forms for his property that had been damaged by NYPD.

     31.  Plaintiff was never charged with a crime or a violation.

     32.  NYPD statements that the June 28 incident arose from an investigation into a "possible explosive device" and that NYPD "took prudent steps to handle what may have been a dangerous situation" were deliberately false.

**2.   Unconstitutional Conduct by the Parks Department**

     33.  From 1992 until 2006, during May-October, plaintiff painted faces and arms and shaped balloons into animal forms at the same spot on Wallace Walk by the entrance to the Children's Zoo in Central Park.

     34.  The June 28, 2006 incident was covered in an article by the *New York Post* on July 2, 2006.  Defendant Linn later mentioned the article to plaintiff while they were both in Central Park.  Thereafter, Linn, Simon, Ray Brown, Barbara Brown, and other Parks Department employees used the incident as a pretext to systematically to deprive plaintiff of his rights guaranteed under the First Amendment to the Constitution of the United States of America.

     35.  On one occasion, Barbara Brown picked up plaintiff's face painting materials and sample display and threw them outside Central Park's outer wall.  She further threatened him that the next time plaintiff would be in Central Park, she would destroy his materials and sample display.

     36.  On or about July 13, 2007, Raymond Brown threatened plaintiff that he would be arrested if he painted again in Central Park.

37.  Parks Department Enforcement Patrol continually harass plaintiff with their physical presence, by among other things, forcibly removing him and his materials from his usual spot in front of the Children's Zoo and placing them in the hot sunlight.

38.  Parks Department Rules & Regulation ("RCNY") §1-05(b) generally prohibits visual artists from selling their work to the public without purchasing a permit for money:

> (b) Unlawful Vending
>
> No person in any park, or street adjacent to or abutting a park (including all public sidewalks of such abutting streets) shall sell, offer for sale, hire, lease or let anything whatsoever, except under and within the terms of a permit, or except as otherwise provided by law.

39.  RCNY §1-03(c)(1) generally bars visual artists from displaying their work without purchasing a permit for money:

> (c) Unlawful posting of notices or signs
>
> (1) No person shall post, display, affix, construct or carry any placard, flag, banner, sign or model or display any such item by means of aircraft, kite, balloon or other aerial device, in, on, or above the surface of any park for any purpose whatsoever without a permit issued by the Commissioner. Each separate item placed in violation of this section shall constitute a separate violation.

40.  RCNY §1-03(b)(6) generally prohibits visual artists from selling their work, an activity that requires a permit, without being issued and having a permit:

> (6) No person shall conduct any activity for which a permit is required unless
> (i) such permit has been issued;
> (ii) all terms and conditions of such permit have been or are being complied with; and
> (iii) the permit is kept on hand at the event, so as to be available for inspection by Police or Department employees.

41.  The First Amendment to the United States Constitution guarantees plaintiff and

6

other visual artists the right to paint and sell their paintings in Central Park or any other NYC park, without a permit.

42.  The Parks Department uses its unconstitutional permit scheme to selectively determine which visual artists it deems fit to practice their art in NYC parks.

43.  As part of their campaign to remove artists, who they do not like from Central Park, Linn and Simon directed the Park Rangers to issue plaintiff a Notice of Violation ("NOV") and Hearing (No. E 156 117 693) on July 7, 2007, under RCNY 1-03 (b)(6), for his alleged failure to have the "required permit" while "exercising his craft 'face painting & Balloon shaping' on parks dept. property."

44.  After hearing, by decision dated August 28, 2007, the NYC Environment Control Board  dismissed the NOV, finding that exercising the craft of face painting and balloon shaping on Parks Department property without a permit does not constitute a 'prohibited use' of such property under 56 RCNY 1-104 not is it a regulated use which requires a permit under 56 RCNY 1-105.

45.  Plaintiff had been routinely granted permits to practice his visual art in Central Park prior to June 28, 2006 (even though he should not have needed such permit).  Since that time, Linn and Simon have directed Claudia Pepe, Director of Special Events and Permits, Manhattan, to outright deny and ignore plaintiff's permit applications.

46.  Central Park is not Linn or Simon's private playground.

**FIRST CLAIM FOR RELIEF**
(42 USC §1983, Deprivation of Rights - NYPD)

47.  Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 46 as if more fully set forth herein.

7

48. New York City detectives and police officers deprived plaintiff of rights guaranteed under the Constitution of the United States: not to be deprived of liberty without due process of law or to be subjected the use of excessive force while in the custody of municipal law enforcement employees.

49. By the act of arresting and detaining plaintiff, NYPD officers deprived plaintiff of his liberty without due process of law.

50. Through the acts of arresting and detaining plaintiff, NYPD officers engaged in excessive force and conduct that was unnecessary or excessive under the circumstances.

51. At all times alleged, the NYPD detectives and officers were acting under the color of law, in they were acting in the performance of their official duties while employed by NYPD, including exercising their official powers as a police officer.

52. The NYPD detectives and officers acted recklessly, wilfully, wantonly or maliciously, and without good faith, toward plaintiff.

53. Plaintiff suffered visible physical bruises and psychological injuries

54. By reason of the foregoing, plaintiff has been damaged in such amounts as may be proved at trial, including physical and psychological injuries, and property damage. Plaintiff is also entitled to punitive damages.

### SECOND CLAIM FOR RELIEF
(False Arrest/Imprisonment)

55. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 54 as if more fully set forth at length herein.

56. NYPD arrested plaintiff without a warrant or probable cause, for acts that had not been committed in a law enforcement officer's presence.

8

57. Plaintiff was conscious of the confinement and it was against his will.

58. Plaintiff's arrest and confinement was not otherwise privileged and excessive.

59. By reason of the foregoing, plaintiff has been damaged in such amounts as may be proved at trial, including physical and psychological injuries, and property damage. Plaintiff is also entitled to punitive damages.

### THIRD CLAIM FOR RELIEF
(Outrageous Conduct Causing Severe Emotional Distress)

60. Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 61 as if more fully set forth at length herein.

61. The manner of NYPD's arrest and confinement of plaintiff was so outrageous and shocking as to exceed the reasonable bounds of decency as measured by what could be tolerated by an average member of the community.

62. NYPD's conduct was intentional, or was undertaken knowingly, with substantial certainty that plaintiff would suffer severe emotional distress, or was reckless because it was done in such manner and under such circumstances as to show utter disregard for the consequences that would follow.

63. Ryan and other NYPD employees acted recklessly, wilfully, wantonly and/or maliciously, and without good faith, toward plaintiff

64. Plaintiff's emotional distress was of such intensity and duration that no reasonable person could have been expected to endure it.

65. Plaintiff had previously suffered from psychoathenia, which condition was severely exacerbated by NYPD's conduct. Among others things, NYPD's conduct caused plaintiff to

9

confine himself to his apartment for several months and thereafter seek regular psychotherapy and counseling.

66.   By reason of the foregoing, plaintiff has been emotionally and psychologically damaged in such amounts as may be proved at trial.  Plaintiff is also entitled to punitive damages.

## FOURTH CLAIM FOR RELIEF
(42 USC §1983, Deprivation of Rights - Parks Department)

67.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 66 as if more fully set forth at length herein.

68.   Aside from the extraordinary infantile nature of Linn and Simon's conduct, the Parks Department's conduct toward plaintiff was intended to chill his First Amendment rights to practice his visual art in Central Park.

69.   Parks Department employees' conduct, e.g., physical coercion and issuing him a Notice of Violation and Hearing for not having a permit to face paint, among other things, created a credible threat of prosecution and chilled plaintiff's First Amendment rights by intimidating him from practicing as a visual artist in Central Park.

70.   At all times alleged, the Parks Department employees were acting under the color of law, in they were acting in the performance of their official duties while employed by the Parks Department, including exercising their official powers.

71.   Parks Department employees acted recklessly, wilfully, wantonly or maliciously, and without good faith, toward plaintiff.

72.   By reason of the foregoing, plaintiff has been damaged in such amounts as may be proved at trial, including physical and psychological injuries, and property damage.  Plaintiff is

10

entitled to punitive damages.

## FIFTH CLAIM FOR RELIEF
(Declaratory Judgment - 28 U.S.C. §2201)

73.  Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 72 as if more fully set forth herein.

74.  RCNY §1-05(b) is unconstitutional in that it prohibits visual artists from selling their work to the public in NYC parks without purchasing a permit for money

75.  RCNY §1-03(c)(1) is unconstitutional in that it prohibits a visual artist from setting up a reasonable displaying of samples of his/her work in NYC parks.

76.  RCNY §1-03(c)(6) is unconstitutional in that it requires a visual artist to obtain and display a permit for a fee to exercise his/her First Amendment rights in NYC parks.

77.  The referenced Parks Department regulations are not sufficiently narrow in time, place, and manner to survive scrutiny under the First Amendment.

78.  The referenced Parks Department regulations do not create a *de minimis* inconvenience for visual artists.

79.  Plaintiff seeks a declaration under 28 U.S.C. §2201 that RCNY §§1-03(c)(1)&(6) and 1-05(b) are unconstitutional as applied to visual artists in NYC parks.

## SIXTH CLAIM FOR RELIEF
(Injunctive Relief)

80.  Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 79 as if more fully set forth herein.

81.  RCNY §§1-03(c)(1)&(6) and 1-05(b) are unconstitutional as applied to visual artists rendering paintings for sale.

11

82.   Plaintiff seeks a permanent injunction enjoining the Parks Department from enforcing RCNY §§1-03(c)(1)&(6) and 1-05(b) are unconstitutional as to visual artists rendering paintings for sale.

83.   Plaintiff and other visual artists have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF
(Vicarious Liability as to New York City)

84.   Plaintiff repeats and realleges each and every allegation of Paragraphs 1 through 83 as if more fully set forth herein.

85.   At all times alleged herein, the individual defendants were employed by NYC, acting on its behalf, and within the scope of their duties.

86.   NYC is vicariously liable for its employees' conduct as alleged in the state law claims.

WHEREFORE plaintiff Alexander Alhovsky demands judgment against defendants as to the following: (1) compensation for physical and psychological injuries; (2) compensation for plaintiff's personal property destroyed or rendered inoperative and unusable; (3) punitive damages arising from defendants' reckless, willful, wantonly and/or maliciously conduct undertaken without good faith; (4) a declaration that RCNY §§1-03(c)(1)&(6) and 1-05(b) are unconstitutional as applied to visual artists rendering paintings for sale; and (5) a permanent injunction enjoining the Parks Department from enforcing RCNY §§1-03(c)(1)&(6) and 1-05(b) as applied to visual artists rendering paintings for sale, and that he be granted reasonable attorneys' fees, costs, and such other and further relief as may be deemed just and proper.

12

**ERLANGER LAW FIRM PLLC**
Attorneys for Plaintiff Alexander Alhovsky


By: s/ Robert K. Erlanger
          Robert K. Erlanger (RE 0886)

Dated: October 11, 2007

### JURY DEMAND

Plaintiff hereby demands trial by jury.

By: s/ Robert K. Erlanger
          Robert K. Erlanger (RE 0886)

Dated: October 11, 2007