Index No. 07 CV 7628 (CM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER ALHOVSKY,

Plaintiff,

-against-

THOMAS RYAN, NEW YORK CITY POLICE DEPARTMENT
DETECTIVES "1-5", NEW YORK CITY POLICE DEPARTMENT
OFFICERS "1-10", JACK T. LINN, STEVE SIMON, RAY BROWN,
BARBARA BROWN, the NEW YORK CITY DEPARTMENT OF
PARKS AND RECREATION, and the CITY OF NEW YORK,

Defendants.

**DEFENDANTS DETECTIVE THOMAS RYAN AND THE CITY
OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendants Detective Thomas Ryan and the City*
*of New York*
*100 Church Street*
*New York, New York  10007*

*Of Counsel:  Suzette Corinne Rivera*
*Tel:  (212) 788-9567*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

RULE 12(C) STANDARD FOR DISMISSAL ............................................................. 2

ARGUMENT

    POINT I

        PLAINTIFF FAILS TO STATE A CLAIM OF
        EXCESSIVE FORCE AGAINST DETECTIVE
        THOMAS RYAN ...................................................................................... 4

        A. Plaintiff cannot demonstrate that Detective
            Ryan was personally involved in the alleged
            use of force. ............................................................................ 4

        B. Plaintiff cannot demonstrate that the force
            allegedly used was excessive. ................................................ 5

    POINT II

        PLAINTIFF FAILS TO STATE A CLAIM FOR
        FALSE ARREST AGAINST THOMAS RYAN ....................................... 7

    POINT III

        DEFENDANT THOMAS RYAN IS ENTITLED
        TO QUALIFIED IMMUNITY ON ALL OF
        PLAINTIFF'S CLAIMS ....................................................................... 12

        A. Thomas Ryan is Entitled to Qualified Immunity
            on Plaintiff's Excessive Force Claim. ............................... 16

        B. Thomas Ryan is Entitled to Qualified Immunity
            on Plaintiff's False Arrest/Imprisonment Claim ............... 17

        C. Plaintiff Does Not Set Forth A Viable Claim
            for Intentional Infliction Of Emotional Distress ................ 20

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                        <u>Pages</u>

Anderson v. Creighton,
    483 U.S., 107 S. Ct. 3039 (1987)...............................................................14, 15

Anderson v. Recore,
    317 F.3d 194 (2d Cir. 2003).........................................................................13

Anthony v. City of New York,
    339 F.3d 129 (2d Cir. 2003).........................................................................16

Baker v. McCollan,
    443 U.S. 137, 146; 99 S. Ct. 2689 (1979)......................................................8

Boddie v. Schnieder,
    105 F.3d 857 (2d Cir. 1997).........................................................................3

Bove v. City of New York,
    98 Civ. 8800 (HB), 1999 U.S. Dist. LEXIS 12112 (S.D.N.Y. Aug. 6, 1999)
    aff'd, 2000 U.S. App. LEXIS 11895 (2d Cir. May 24, 2000) ....................................6

Brogdon v. City of New Rochelle,
    200 F. Supp. 2d 411 (S.D.N.Y. 2002)...........................................................14

Campbell v. Giuliani,
    99 Civ. 2602 (JG), 2001 U.S. Dist. LEXIS 609 (E.D.N.Y. Jan. 24, 2001) ..............9

Cartier v. Lussier,
    955 F.2d 841 (2d Cir. 1992).........................................................................14

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002).........................................................................3

Connell v. Signoracci,
    153 F.3d 74 (2d Cir. 1998)...........................................................................13

Cunningham v. Rodriguez,
    01 CV 1123 (DC), 2002 U.S. Dist. LEXIS 22660 (S.D.N.Y. Nov. 22, 2002) ..........6

Curry v. City of Syracuse,
    316 F.3d 324 (2d Cir. 2003)...........................................................................5

Dukes v. City of New York,
    879 F. Supp. 335 (S.D.N.Y. 1995) ...............................................................8, 9

**Cases**                                                                          **Pages**

EEOC v. Die Fliedermaus L.L.C.,
    77 F. Supp. 2d 460 (S.D.N.Y.1999)..................................................................20

Electronics Communications Corp. v. Toshiba America Consumer Prods., Inc.,
    129 F.3d 240 (2d. Cir. 1997)..........................................................................3

Finnegan v. Fountain,
    915 F.2d 817 (2d Cir. 1990)...........................................................................16

Gant v. Wallingford Bd of Education, et al.,
    69 F.3d 669 (2d Cir. 1995).............................................................................3

Graham v. Conner,
    490 U.S. 394, 396-7; 109 S. Ct. 1865 (1989) ..............................................5, 9, 17

Grant v. City of New York,
    848 F. Supp. 1131 (S.D.N.Y. 1992).................................................................9

Hamilton v. Broomfield,
    95 Civ. 3241 (MBM), 1998 U.S. Dist. LEXIS 352 (S.D.N.Y. Jan. 20, 1998) ........5

Harlow v. Fitzgerald,
    457 U.S. 800, 102 S.Ct. 2727 (1982)..........................................................12, 14

Harville v. Lowville Central School Dist.,
    245 A.D.2d 1106; 667 N.Y.S.2d 175 (N.Y. App. Div. 4th Dept. 3 1997) ............20

Hope v. Pelzer,
    536 U.S. 730, 122 S.Ct. 2508 (2002)..............................................................13

Howell v. New York Post Co.,
    81 N.Y.2d 115, 121; 596 N.Y.S.2d 350 (1993).................................................20

Hudson v. McMillian,
    503 U.S. 1, 112 S. Ct. 995 (1992)....................................................................7

Hunter v. Bryant,
    502 U.S. 224, 112 S. Ct. 534 (1991).............................................................13, 15

International Audiotext Network, Inc. v. AT&T Co.,
    62 F.3d 69 (2d Cir. 1995)............................................................................2, 3

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)...........................................................................14

**Cases**                                                                           **Pages**

Johnson v. Glick,
    481 F.2d 1028 (2d Cir. 1973)...................................................................................5

Johnson v. Police Officer #17969, et al.,
    2000 U.S. Dist. LEXIS 18521 (S.D.N.Y. December 26, 2000) ................................5

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995)...........................................................................14, 16

Lindsey v. Loughlin,
    616 F. Supp. 449 (E.D.N.Y. 1985) .........................................................................8

Majid v. Malone,
    95 Civ. 2545 (HB), 1996 U.S. Dist. LEXIS 3515 (S.D.N.Y. Mar. 26, 1996) ......................3, 4

Malley v. Briggs,
    475 U.S. 335, 106 S.Ct. 1092 (1986)..................................................................14

Maxwell v. City of New York,
    272 F. Supp. 2d 285 (S.D.N.Y. July 10, 2003).......................................................6

McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.,
    256 A.D.2d 269, 682 N.Y.S.2d 167 (1st Dept. 1998).......................................20, 21

Miloslavsky v. AES Engineering Society, Incl.,
    808 F. Supp. 351 (S.D.N.Y. Dec. 14, 1992) ........................................................86

Mistretta v. Prokesch,
    5 F. Supp. 2d 128 (E.D.N.Y. 1998) ......................................................................9

Mitchell v Forsyth,
    472 U.S. 511, 105 S.Ct. 2806 (1985).............................................................. 12-13

Moore, et al. v. City of New York,
    219 F. Supp. 2d 335 (E.D.N.Y. 2002) ............................................................ 20-21

Oliveira v. Mayer,
    23 F.3d 642 (2d Cir. 1994)................................................................................14

Perez v. City of New York,
    97 Civ. 2915 (EHN), 1998 U.S. Dist. LEXIS 12274 (E.D.N.Y. June 18, 1998).....................9

Ricciuti v. Transit Authority,
    124 F.3d 123 (2d Cir. 1997)............................................................................ 7-8

**Cases** <span style="float:right">**Pages**</span>

Romano v. Howarth,
  998 F.2d 101 (2d Cir. 1993)..................................................................................6

Rooney v. Wittich,
  21 F. Supp. 2d 273 (S.D.N.Y. 1998).............................................................20-21

Estate of Rosenbaum by Plotkin v. City of New York,
  975 F. Supp. 206 (E.D.N.Y. 1997) .....................................................................14

Samuels v. Air Transportation Local 504,
  992 F.2d 12 (2d Cir. 1993)...................................................................................6

Santiago v. C.O. Campisi, et al.,
  91 F. Supp. 2d 665 (citing U.S. v . Walsh, 194 F.3d 37, 50 (2d Cir. 1999)) ...........14

Saucier v. Katz,
  533 U.S. 194, 121 S.Ct. 2151 (2001).........................................................13, 14, 15

Savino v. City of New York,
  322 F.3d 63 (2d Cir. 2003)...................................................................................9

Smith v. P.O. Canine Dog Chas, Shield No. 170,
  2004 U.S. Dist. LEXIS 19623 (S.D.N.Y. Sept. 28, 2004)........................................4

Speights v. City of New York,
  98 CV 4635 (NG)(JMA), 2001 U.S. Dist. LEXIS 10433 (E.D.N.Y. June 18, 2001)..............17

State of New York v. Rosario,
  78 N.Y.2d 583, 588, 578 N.Y.S.2d 454 (1991) ......................................................9

Stuto v. Fleishman,
  164 F.3d 820 (2d Cir. 1999)................................................................................20

Torchinsky v. Siwinski,
  942 F.2d 257 (4th Cir. 1991) ................................................................................9

U.S. v. Ceballos,
  812 F.2d 42 (2d Cir. 1987)...................................................................................7

U.S. v. Fisher,
  702 F.2d 372 (2d Cir. 1983).................................................................................7

United States v. Colon,
  250 F.3d 130 (2d Cir. 2001)..............................................................................8, 9

**Cases**                                                                          **Pages**

United States v. Ginsberg,
    758 F.2d 823 (2d Cir. 1985)..................................................................8

United States v. Pantoja-Soto,
    739 F.2d 1520 (11th Cir. 1984),
    cert. denied, 470 U.S. 1008 (1985) ....................................................8

United States v. Walsh,
    194 F.3d 37 (2d Cir. 1999)...................................................................6

Varrone v. Bilotti,
    123 F.3d 75 (2d Cir. 1997)..................................................................16

Warren v. Dwyer,
    906 F.2d 70 (2d Cir. 1990)..................................................................16

Washington Square Post No. 1212 v. Maduro,
    907 F.2d 1288 (2d Cir. 1990)..............................................................13

Weyant v. Okst,
    101 F.3d at 852 ....................................................................................7

Wilder v. Vill. Amityville,
    288 F. Supp. 2d 341 (E.D.N.Y. Oct. 30, 2003)....................................7

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994)..................................................................44

Young v. County of Fulton,
    160 F.3d 899 (2d Cir. 1998)................................................................13

Zurcher v. Stanford Daily,
    436 U.S. 547; 98 S. Ct. 1970 (1978)....................................................8

**Statutes**

42 U.S.C. § 1983.................................................................................1, 4, 7

FRCP 12(b)(6) ...............................................................................2, 3, 10

FRCP 12(c) .........................................................................................2, 3

Fed. R. Civ. P. 56................................................................................3

N.Y. Penal Law § 240.62...........................................................11, 18, 19, 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ALEXANDER ALHOVSKY,

                                        Plaintiff,

          -against-                                          07 CV 7628 (CM)

THOMAS RYAN, NEW YORK CITY POLICE
DEPARTMENT DETECTIVES "1-5", NEW YORK
CITY POLICE DEPARTMENT OFFICERS "1-10",
JACK T. LINN, STEVE SIMON, RAY BROWN,
BARBARA BROWN, and the NEW YORK CITY
DEPARTMENT OF PARKS AND RECREATION, and
the CITY OF NEW YORK,

                                        Defendants.

------------------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

### PRELIMINARY STATEMENT

Plaintiff Alexander Alhovsky brings this action, pursuant to 42 U.S.C. § 1983, alleging civil rights violations following an incident with members of the New York City Police Department on June 28, 2006[1]. Specifically, plaintiff alleges claims of excessive force and false arrest under federal law, and a claim of intentional infliction of emotional distress under New

---

[1] The only policy claim brought by plaintiff is based on his allegations against the Parks Department. *See Rivera Decl., Exhibit A.* The parties have reached an agreement in principle to settle plaintiff's claims against the Parks Department and Parks Department employees (i.e., Counts 4, 5, 6 and part of 7 of plaintiff's amended complaint), and are in the process of trying to come to an agreement about the payment of attorneys fees to plaintiff's counsel for his work on those claims. The parties anticipate reaching a resolution and executing a stipulation of settlement and discontinuance in the near future. However, if a final settlement is not executed, the City will move for summary judgment on those claims in a separate motion.

York law. Defendant Detective Thomas Ryan and defendant City of New York[2] submit this memorandum of law in support of his motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and in accordance with the Court's individual practices[3], on the grounds that plaintiff fails to state a claim against him, and on the grounds that he is entitled to qualified immunity on all of plaintiff's claims.

## STATEMENT OF FACTS

For a complete statement of facts, the Court is respectfully referred to City Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, dated April 29, 2008, ("City Defendants' 56.1 Statement"), submitted herewith.

## RULE 12(C) STANDARD FOR DISMISSAL

Rule 12(c) of the Federal Rules of Civil Procedure states "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The standard to be applied to a motion for judgment on the pleadings brought under FRCP 12(c) is the same as a motion to dismiss under FRCP 12(b)(6). In deciding a motion to dismiss under FRCP 12(b)(6), a Court should consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transportation Local 504, 992 F.2d 12, 15 (2d Cir. 1993); see also International Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d

---

[2] The only remaining claim against the City of New York is one for vicarious liability based on Detective Ryan's alleged false arrest, excessive force and intentional infliction of emotional distress. Because, for the reasons stated herein, plaintiff fails to state a claim against Detective Ryan, the City of New York cannot be held vicariously liable.

[3] Defendants respectfully reserve the right to move for summary judgment at the close of discovery, should the Court deem the defense of qualified immunity to be inapplicable at this time.

Cir. 1995) (*per curiam*).  For purposes of dismissal, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting Int'l Audiotext, 62 F.3d at 72).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers, 282 F.3d at 153. (internal citations omitted).

However, "while Conley permits a pleader to enjoy all favorable inferences from facts that have been pleaded, it does not permit conclusory statements to substitute for minimally factual allegations." Electronics Communications Corp. v. Toshiba America Consumer Prods., Inc., 129 F.3d 240, 243 (2d. Cir. 1997).  The Court is not required to uphold the validity of a claim supported only by conclusory allegations. Gant v. Wallingford Bd of Education, et al., 69 F.3d 669, 673 (2d Cir. 1995). ("It is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find violation…fails to state a claim under Rule 12(b)(6).").  Id

On a motion for judgment on the pleadings, defendants must show that plaintiff is not entitled to relief under any set of facts that could be proved consistent with the allegations. To survive the motion, plaintiff must show a cognizable claim and allege facts that, if true, would support such a claim. Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997).  A court may consider materials outside of the pleadings and convert a motion to dismiss into one for summary judgment pursuant to Fed. R. Civ. P. 56.  Fed. R. Civ. P. 12 (c); Majid v. Malone, 95 Civ. 2545 (HB), 1996 U.S. Dist. LEXIS 3515 at 3 (S.D.N.Y. Mar. 26, 1996).

**ARGUMENT**

**POINT I**

**PLAINTIFF FAILS TO STATE A CLAIM OF
EXCESSIVE FORCE AGAINST DETECTIVE
THOMAS RYAN**

**A.    Plaintiff cannot demonstrate that Detective Ryan was personally involved in the
alleged use of force.**

To the extent plaintiff brings an excessive force claim against Detective Ryan, that claim must be dismissed.  Plaintiff claims that he was subjected to excessive force when he was apprehended and handcuffed on June 28, 2006.  *See Rivera Decl., Exhibit A, ¶ 23.* However, it is undisputed that Detective Ryan was not present when plaintiff was apprehended and handcuffed, and that he did not arrive on the scene until after plaintiff was in custody. *See Rivera Decl., Exhibit N, ¶¶ 15, 20 and 21.*  Plaintiff does not allege that he was subjected to excessive force at any time subsequent to his apprehension and arrest, and does not allege that he was subjected to excessive force when he was interviewed at the 19th precinct or at any time thereafter before his release.    *See Rivera Decl., Exhibit A.*  Because plaintiff cannot offer any competent evidence to support his claim that defendant Ryan was personally involved in the alleged unconstitutional use of force, his federal excessive force claim must be dismissed.  Smith v. P.O. Canine Dog Chas, Shield No. 170, 2004 U.S. Dist. LEXIS 19623 (S.D.N.Y. Sept. 28, 2004)(claim of excessive force under § 1983 dismissed on summary judgment where plaintiff failed to proffer any competent evidence that defendants were personally involved in assault).

It is well settled that personal involvement is a prerequisite to liability under § 1983.  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)(internal quotation marks omitted). Here, the record is devoid of any evidence that defendant Ryan had any contact whatsoever with plaintiff until after he was apprehended and handcuffed.  *See Rivera Decl., Exhibits C and N. ¶¶*

4

*15, 20 and 21.* Therefore, plaintiff's excessive force claim against Detective Ryan must be dismissed.

**B.    Plaintiff cannot demonstrate that the force allegedly used was excessive.**

Even assuming, *arguendo*, that plaintiff could demonstrate with record evidence that Detective Ryan was present for his apprehension and arrest (which defendants vigorously dispute), his excessive force claim fails. In evaluating the validity of a claim for excessive force, the standard of "objective reasonableness" is used. Graham v. Connor, 490 U.S. 394, 396-7; 109 S. Ct. 1865 (1989). The Graham Court has clarified that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" rises to the level of a constitutional violation. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). A plaintiff can "prevail on his excessive force claim if he is able to show that [the defendant officer] used more force than was necessary to subdue him." Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir. 2003). The officers' actions, however, "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. at 396. An inquiry requires the factfinder to apply "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. The extent of a plaintiff's injuries are "highly relevant to the reasonableness of force applied." Johnson v. Police Officer #17969, et al., 2000 U.S. Dist. LEXIS 18521, *11 (S.D.N.Y. December 26, 2000) (J. Buchwald); see also Hamilton v. Broomfield, 95 Civ. 3241 (MBM), 1998 U.S. Dist. LEXIS 352, *8 (S.D.N.Y. Jan. 20, 1998) (bloody lip, red mark and swelling on the leg do not constitute excessive force). Furthermore, it has been held that the absence of medical evidence is enough to dismiss a plaintiff's claim.

Santiago v. C.O. Campisi, et al., 91 F. Supp. 2d 665, 674 (citing U.S. v . Walsh, 194 F.3d 37, 50 (2d Cir. 1999)).

Here, plaintiff alleges that excessive force was used when he was apprehended and handcuffed. *See Rivera Decl., Exhibit A ¶ 3.* In support of his contention, plaintiff alleges only that that his shoulder was "bruised up", he felt a "sucking pain" near his kidney and his arm was "bruised up." *See Rivera Decl., Exhibit S, pages 133 line 21 through 134 line 22.* Plaintiff conceded that he had no visual bruises on his face. *See Rivera Decl., Exhibit T.* Plaintiff did not seek any medical treatment for these alleged injuries. *See Rivera Decl., Exhibit U.*

To sustain a claim for excessive force, plaintiff must establish through evidence, that "the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." Cunningham v. Rodriguez, 01 CV 1123 (DC), 2002 U.S. Dist. LEXIS 22660, at *10-11 (S.D.N.Y. Nov. 22, 2002)(quoting United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)). The Second Circuit has held that "a *de minimis* use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993); see also Maxwell v. City of New York, 272 F. Supp. 2d 285, 298 (S.D.N.Y. July 10, 2003) ("minor scrapes, bumps or bruises potentially could occur, often unintended, during any arrest, and an arresting officer can not be held unremittingly liable for every such incident."). Thus, a plaintiff must demonstrate that the amount of force used was more than *de minimis.* Romano, 272 F. Supp. 2d at 298; see, e.g., Cunningham, 2002 U.S. Dist. LEXIS 22660, at *12-13 (blows to back and face were *de minimis*); Bove v. City of New York, 98 Civ. 8800 (HB), 1999 U.S. Dist. LEXIS 12112, at *20-21 (S.D.N.Y. Aug. 6, 1999) aff'd 2000 U.S. App. LEXIS 11895 (2d Cir. May 24, 2000) (summary judgment granted on excessive force claim where hospital records showed force used was *de minimis*); Wilder v. Vill. Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. Oct. 30, 2003)

(dismissing excessive force claim based on allegations of tight handcuffs). Although the severity of plaintiff's injuries is not determinative, it is relevant to the consideration of whether the force used was reasonable. Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999 (1992). Here, plaintiff cannot demonstrate that the alleged force used during his apprehension and arrest was anything more than *de mimimus* and he did not sustain any serious injury, nor did he seek any medical treatment. Therefore, his excessive force claim must be dismissed.

As set forth above, because plaintiff cannot demonstrate that i) Detective Ryan was personally involved in any alleged use of force, and ii) the force allegedly used against him was anything more than *de minimus*, his excessive force claim must be dismissed.

## POINT II

## PLAINTIFF FAILS TO STATE A CLAIM FOR FALSE ARREST AGAINST THOMAS RYAN

Plaintiff cannot establish a lack of probable cause for his arrest on June 28, 2006. The "existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under §1983." Weyant v. Okst, 101 F.3d at 852 (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). Probable cause exists when the police officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that: (1) an offense has or is being committed (2) by the person to be arrested." U.S. v. Ceballos, 812 F.2d 42, 50 (2d Cir. 1987) (citing U.S. v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983)). In evaluating whether probable cause existed for a particular arrest, a court should consider the facts available to the officer at the time of that arrest. Ricciuti v. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997). The standard of evaluating the existence of

probable cause is an objective one. Lindsey v. Loughlin, 616 F. Supp. 449, 451 (E.D.N.Y. 1985).

To establish that probable cause for an arrest existed, a police officer need not show evidence "beyond a reasonable doubt." Miloslavsky v. AES Engineering Society, Incl., 808 F. Supp. 351, 354-55 (S.D.N.Y. Dec. 14, 1992)(citing United States v. Pantoja-Soto, 739 F.2d 1520, 1523 (11th Cir. 1984), cert. denied, 470 U.S. 1008 (1985). Nor must an officer demonstrate that it is more probable than not an offense has been committed to make a *prima facie* showing of criminal activity. Miloslavsky v. AES Engineering Society, Incl., 808 F. Supp. 351, 354-55 (S.D.N.Y. Dec. 14, 1992)(citing United States v. Ginsberg, 758 F.2d 823 (2d Cir. 1985)). "Instead, 'the standard of probable cause requires only the probability of criminal activity.'" Miloslavsky v. AES Engineering Society, Incl., 808 F. Supp. 351, 354-55 (S.D.N.Y. Dec. 14, 1992)(citing Lindsey v. Loughlin, 616 F. Supp. 449, 452 (E.D.N.Y. 1985)(citing Zurcher v. Stanford Daily, 436 U.S. 547; 98 S. Ct. 1970 (1978)). Thus, the validity of an arrest does not depend upon an ultimate finding of guilt or innocence. Dukes v. City of New York, 879 F. Supp. 335, 340 (S.D.N.Y. 1995)("the soundness of the arrest hinges on the existence of probable cause"). "The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 146; 99 S. Ct. 2689 (1979).

Additionally, an officer arresting a plaintiff does not have to have knowledge of all *or any* of the facts and circumstances that establish the probable cause to arrest. An officer acts lawfully when he reasonably relies upon the information received by other law enforcement officials. See United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001) ("the whole complex of swift modern communication in a large police department would be a futility if the authority of

an individual officer [were] to be circumscribed by the scope of his first hand knowledge of facts concerning a crime or alleged crime.")

Thus, if the collective knowledge of the officers on the scene is of such weight and persuasiveness as to convince an officer of ordinary intelligence, judgment, and experience that there is probable cause, then the officer relying on that information also has probable cause to arrest. Police officers are entitled to act on information received from other officers based upon the presumption that those officers furnishing information to the arresting officer possess the necessary probable cause. See United States v. Colon, 250 F.3d 130, 137 (2d Cir. 2001) (collective knowledge doctrine is analogous to New York State's "fellow officer" rule); State of New York v. Rosario, 78 N.Y.2d 583, 588, 578 N.Y.S.2d 454 (1991). That information includes all the facts and circumstances leading to the arrest, including the knowledge and information of all cooperating law enforcement officials; "the knowledge of one is presumed shared by all." Savino v. City of New York, 322 F. 3d 63, 74 (2d Cir. 2003).

Moreover, simply because an arrestee asserts that he or she is innocent, that does not necessarily mean that a police officer lacked probable cause to arrest. So long as there is probable cause, a police officer is not required to explore every theoretical plausible claim of innocence before making an arrest. Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991); Campbell v. Giuliani, 99 Civ. 2602 (JG), 2001 U.S. Dist. LEXIS 609 (E.D.N.Y. Jan. 24, 2001); Mistretta v. Prokesch, 5 F. Supp. 2d 128 (E.D.N.Y. 1998); Perez v. City of New York, 97 Civ. 2915 (EHN), 1998 U.S. Dist. LEXIS 12274, at *4 (E.D.N.Y. June 18, 1998); Dukes v. City of New York, 879 F. Supp. 335, 343 (S.D.N.Y. 1995); Grant v. City of New York, 848 F. Supp. 1131, 1135 (S.D.N.Y. 1992).

At approximately 10:10 p.m. on June 25, 2006, a 911 call was placed from that Starbucks in which the caller stated that a suspicious package, which appeared to be an explosive device, had been left at the location. *See Rivera Decl., Exhibit D.* Police Officers from the 19th Precinct, as well as officers from the Emergency Services Unit and the Bomb Squad, arrived at that Starbucks. *See Rivera Decl., Exhibit E.* The various officers that arrived at the Starbucks conducted interviews of the employees at Starbucks and tested the device that was left at the location. *See Rivera Decl., Exhibit F.* After conducting visual and radiographic examinations of the device that was left at Starbucks, it was determined that the device was not an explosive device. *See Rivera Decl., Exhibit G.* The detectives did not know what the device was, but determined that it was constructed in such a way as to resemble one that could cause public alarm and therefore it was deemed to be a "Hoax Device". *Id.*

Police Officers continued to investigate the incident in order to determine who left the device at Starbucks and on June 26, 2006, and obtained a surveillance tape from Starbucks that showed the individual leaving the device.. *See Rivera Decl., Exhibits I and J.* The surveillance tape showed plaintiff in Starbucks on June 25, 2006, inside of the location leaving the device. *See Rivera Decl., Exhibit Q.* On June 26, 2006, photographs were taken of the device that was left at Starbucks on June 25, 2006. *See Rivera Decl., Exhibit R.* On June 27, 2006, still photographs from the surveillance tape were made by members of the New York City Police Department. *See Rivera Decl., Exhibits K and Q.*

On June 28, 2006, members of the New York City Police Department set up surveillance at Starbucks in an attempt to locate the individual that left the hoax device at that location on June 25, 2006. *See Rivera Decl., Exhibit L.* On that date, members of the New York City Police Department saw plaintiff riding a bicycle past the Starbucks located at 1128 Third

Avenue in Manhattan, New York. *See Rivera Decl., Exhibit N, ¶ 10.* When the members of the New York city Police Department saw plaintiff riding his bicycle on June 28, 2006, they recognized him as the person who left the device in Starbucks on June 25, 2006. *Id. at ¶ 13.* A radio transmission was sent from members of the New York City Police Department to other members of the New York City Police Department regarding the pursuit of plaintiff. *Id. at ¶ 9.* Plaintiff was arrested on June 28, 2006 in the vicinity of 1st Avenue and East 66th Street in Manhattan, New York. *Id. at ¶ 15.* At the time plaintiff was placed into custody, plaintiff was in possession of a belly bag that contained a plastic tube with a switch on the end. *See Rivera Decl., Exhibit M.* Detective Ryan responded to that location and observed plaintiff, who was handcuffed and in the custody of police officers. *See Rivera Decl., Exhibit N, ¶¶ 6- 8.*

Detective Ryan transported plaintiff to the 19th Precinct and interviewed plaintiff about the device that he left at Starbucks on June 25, 2006. *Id. at ¶ 16.* After questioning plaintiff and conducting research on the internet, it was determined that the device left at Starbucks on June 25, 2006, was in fact a balloon inflation device. *Id. at ¶ 19.* Plaintiff's arrest for a violation of Penal Law Section 240.62 was subsequently voided as a result of the police investigation. *See Rivera Decl., Exhibit P.*

N.Y. Penal Law § 240.62, provides:

§ 240.62 Placing a false bomb or hazardous substance in the first degree.

> A person is guilty of placing a false bomb or hazardous substance in the first degree when he or she places, or causes to be placed, in or upon school grounds, a public building, or a public place any device or object that by its design, construction, content or characteristics appears to be or to contain, a bomb, destructive device, explosive or hazardous substance, but is, in fact, an inoperative facsimile or imitation of such a bomb, destructive device, explosive or hazardous substance and which he or she knows, intends or reasonably believes will appear to be a bomb, destructive device, explosive or hazardous substance under

circumstances in which it is likely to cause public alarm or inconvenience. For purposes of this section the term "public building" shall have the meaning set forth in section four hundred one of the executive law. Placing a false bomb or hazardous substance in the first degree is a

class D felony.

Based on the above, members of the New York City Police Department were obligated to investigate when they received a 911 call about what appeared to be an explosive device on June 25, 2006. Although the device was not an actual bomb, Detective Ryan needed to conduct a further investigation to determine whether the device, which resembled an explosive device, was left at Starbucks by a person who knew, intended or reasonably believed that it would cause public alarm. Based on all the facts and circumstances known to him at the time, detective Ryan had probable cause to bring plaintiff to the precinct for questioning about the device that was left at Starbucks on June 25, 2006.

Therefore, because based on the undisputed facts, there was probable cause for plaintiff's arrest and detention, and his false arrest claim must be dismissed.

## POINT III

### DEFENDANT THOMAS RYAN IS ENTITLED TO QUALIFIED IMMUNITY ON ALL OF PLAINTIFF'S CLAIMS

Qualified immunity shields government officials performing discretionary functions from suit under 42 U.S.C. §1983. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818; 102 S.Ct. 2727, 2738 (1982). A major objective of qualified immunity is to shield government officials not only from civil liability, but from the burdens of defending actions. "The entitlement is an *immunity from suit* rather than a mere defense to liability," and "it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v Forsyth, 472 U.S. 511, 526; 105 S.Ct. 2806, 2815 (1985). Therefore, qualified immunity questions should be resolved "at the

earliest possible stage of litigation," to satisfy the goal of the doctrine. Saucier v. Katz, 533 U.S. 194, 201; 121 S.Ct. 2151, 2156 (2001) (quoting Hunter v. Bryant, 502 U.S. 224, 227; 112 S.Ct. 534, 536 (1991)(per curiam)).

Qualified immunity furthers several important public policy goals -- averting distraction of government officials from their duties, not inhibiting discretionary action, and not deterring able people from public service. Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998). The question of qualified immunity is independent from the merits of the underlying action and must be examined independent of the underlying constitutional claims. Washington Square Post No. 1212 v. Maduro, 907 F.2d 1288, 1292 (2d Cir. 1990)(citing Mitchell, 472 U.S 511; 105 S.Ct. 2086).

As held by the Supreme Court in Saucier, district courts must begin the qualified immunity determination with an analysis of whether, on the facts alleged, the official's conduct violated a constitutional right. Saucier, 533 U.S. at 201; 121 S.Ct. at 2156; Hope v. Pelzer, 536 U.S. 730, 735-6; 122 S.Ct. 2508, 2513 (2002). Assuming that the first prong is satisfied, that is, a constitutional violation is established on the facts alleged, "the next, sequential step is to ask whether the right was clearly established" at the time of the alleged incident. Id. "A right is clearly established if (1) the law is defined with reasonable certainty, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that [his or her] conduct was unlawful.'" Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003)(quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998).

Government officials are entitled to qualified immunity if they establish either: (1) their conduct did not violate clearly established rights of which a reasonable person would

have known; or (2) that it was "objectively reasonable" to believe that their acts did not violate clearly established rights. Anderson v. Creighton, 483 U.S. 635, 640-1; 107 S.Ct. 3034, 3039 (1987); Harlow, 457 U.S. at 817-8; 102 S.Ct. at 2738; Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007). Under the second prong, the focus is not on the "correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene." Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995). See also, Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) (qualified immunity available to officer "when he reasonably believes that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted."); Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 424 (S.D.N.Y. 2002) ("On a motion for summary judgment, the issue is whether a reasonable police officer would have known that what he was doing was clearly illegal based on the facts before him.").

Where reasonably competent officials could disagree as to whether the conduct at issue would violate clearly established rights, the immunity defense is available. Malley v. Briggs, 475 U.S. 335, 341; 106 S. Ct. 1092, 1096 (1986); Cartier v. Lussier, 955 F.2d 841, 846 (2d Cir. 1992). Qualified immunity protects individual defendants from personal liability based solely upon plaintiffs' "hindsight judgment that the outcome might have been better if a different strategy had been implemented from the outset." Estate of Rosenbaum by Plotkin v. City of New York, 975 F. Supp. 206, 222 (E.D.N.Y. 1997). The main "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205; 121 S.Ct. at 2158. Thus, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Id. at 202 (quoting Malley, 475 U.S. at 341; 106 S. Ct. at 1096).

The Supreme Court in <u>Saucier</u> held that district courts must begin the qualified immunity determination with an analysis of whether, on the facts alleged, the officer's conduct violated a constitutional right. 533 U.S. at 200-01, 121 S. Ct. at 2156. Assuming, *arguendo*, that the first prong is satisfied, and a constitutional violation is established on the facts alleged, "the next, sequential step is to ask whether the right was 'clearly established'" at the time of the alleged incident. <u>Id.</u> 533 U.S. at 201, 121 S. Ct. at 2156. The "clearly established" inquiry requires that "if the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." <u>Saucier</u>, at 202-03, 121 S. Ct. at 2156-57.

It is not enough that the applicable general constitutional standard or principle be established. Rather, the right the officer is alleged to have violated must have been "clearly established in a more particularized, and hence more relevant, sense." <u>Id.</u> That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson</u>, 483 U.S. at 640, 107 S. Ct. at 3039. If the officer's conduct violated a right, the test is the objective reasonableness of the officer's belief in the lawfulness of his actions. <u>See</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991) (quoting <u>Anderson</u>, 483 U.S. at 641, 107 S. Ct. at 3039-40). Therefore, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202; 121 S. Ct. at 2156.

Furthermore, it is well settled that police officers, like other government officials performing discretionary functions, are shielded from liability when their conduct does not violate an individual's clearly established constitutional or statutory rights. <u>Warren v. Dwyer</u>,

906 F.2d 70, 74 (2d Cir. 1990). In addition, a police officer will be shielded from liability if he reasonably relies upon or receives instructions from his fellow officer or superior. Anthony v. City of New York, 339 F.3d 129, 138 (2d Cir. 2003). In Varrone v. Bilotti, 123 F.3d 75, 81 (2d Cir. 1997), the Court held that subordinate officers who carried out "the apparently valid order" of a superior officer were entitled "to have the same qualified immunity" as that superior officer.

A.  **Thomas Ryan is Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim.**

As set forth above, because plaintiff cannot demonstrate that Detective Ryan was personally involved in any alleged use of force, his excessive force claim must be dismissed. However, even assuming, *arguendo*, for the purposes of this motion only, that plaintiff could demonstrate that Detective Ryan was involved in the alleged use of force, Detective Ryan is entitled to qualified immunity.

Qualified immunity "is generally available against excessive force claims." Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995) (quoting Finnegan v. Fountain, 915 F.2d 817, 822-23 (2d Cir. 1990)). In determining whether an officer is entitled to qualified immunity in an excessive force case, the proper inquiry is "whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." Id. (citations omitted).

In determining whether the amount of force used is reasonable, the reviewing court must take into consideration "the totality of the circumstances faced by the officer on the scene." See Lennon, 66 F.3d at 425. Furthermore, "allowance [must be made] for the fact that . . . officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Speights v. City of New York, 98 CV 4635 (NG)(JMA), 2001 U.S. Dist. LEXIS

10433, at *16 (E.D.N.Y. June 18, 2001)(quoting Graham v. Conner, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989)). The Supreme Court has held that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. (quoting Graham, 490 U.S. at 396, 109 S. Ct. at 1872).

To the extent that plaintiff has brought an excessive force claim against Detective Thomas Ryan, he is immune from suit under the doctrine of qualified immunity. Plaintiff has not alleged that any officers, besides the officers that apprehended him in front of the Chirping Chicken on June 28, 2006, used force against him. See Rivera Decl., Exhibit A, ¶ 23. Plaintiff does not allege that Detective Ryan participated in his initial apprehension and arrest. Id. He alleges only that Detective Ryan spoke to him at the 19th precinct, and he does not allege that any force was used during the interview. Id. at ¶ 26.

With respect to plaintiff's apprehension and arrest, as set forth in Point I above, the force used by the officers who did apprehend and handcuff plaintiff was de minimus. Therefore, even if the Court were to find that Detective Ryan did participate in the apprehension and handcuffing of plaintiff (which defendants do not concede), he is entitled to qualified immunity from liability on any excessive force claim.

## B.  Thomas Ryan is Entitled to Qualified Immunity on Plaintiff's False Arrest/Imprisonment Claim.

Even if the Court were to find that defendant Ryan committed a violation of the constitution, plaintiff's federal false arrest claim against him must nonetheless be dismissed on the grounds of qualified immunity. Qualified immunity bars plaintiff's claim because it was objectively reasonable for Detective Ryan to transport plaintiff to the 19th Precinct and question him after receiving information that plaintiff left what appeared to be an explosive device in a

public place under circumstances likely to cause public alarm or inconvenience, in violation of N.Y. Penal Law § 240.62.

On June 25, 2006, an employee at Starbucks found what appeared to be an explosive device and called 911. *See Rivera Decl., Exhibit D.* Members of the NYPD responded and Police Officers from the 19th Precinct, as well as officers from the Emergency Services Unit and the Bomb Squad arrived at the above listed Starbucks. *See Rivera Decl., Exhibit E.* The various officers that arrived at the Starbucks conducted interviews of the employees at Starbucks as well as testing of the device that was left at the location. *See Rivera Decl., Exhibit F.* After conducting visual and radiographic examinations of the device that was left at Starbucks, it was determined that the device was not an actual explosive device. *See Rivera Decl., Exhibit G.* The detectives did not know what the device was, but determined that it was constructed in such a way as to cause public alarm and was deemed to be a Hoax Device. *Id.* Police Officers continued to investigate the incident in order to determine who left the device at Starbucks and on June 26, 2006, obtained surveillance video that showed the individual leaving the suspicious device. *See Rivera Decl., Exhibits I and J.* On June 27, 2006, still photographs from the surveillance video were obtained by members of the New York City Police Department. *See Rivera Decl., Exhibit K.*

On June 28, 2006, members of the New York City Police Department set up surveillance at Starbucks in an attempt to locate the individual that left the suspicious device at the location on June 25, 2006. *See Rivera Decl., Exhibit L.* On that date, members of the New York City Police Department saw plaintiff riding a bicycle past the Starbucks located at 1128 Third Avenue in Manhattan, New York. *See Rivera Decl., Exhibit N, ¶ 10.* A radio transmission was sent from members of the New York City Police Department to other members of the New

York City Police Department regarding the pursuit of plaintiff. *Id. at ¶ 9.* Plaintiff was placed into custody by Police Officers Parul, Mornzani and Gaven. *See Rivera Decl., Exhibit M.*

On June 28, 2006, Detective Ryan responded to the location of First and 61st Street pursuant where plaintiff was in the custody of police officers. *See Rivera Decl., Exhibit N at ¶ 15.* Detective Ryan transported plaintiff to the 19th Precinct where plaintiff was questioned regarding the device that he left at Starbucks on June 25, 2006. *Id. at ¶ 18.* After questioning plaintiff and conducting research on the internet, it was determined that the device left at Starbucks on June 25, 2006, was in fact a balloon inflation device. *Id. at ¶ 19.* Plaintiff's arrest for a violation of Penal Law Section 240.62 was subsequently voided as a result of the police investigation. *See Rivera Decl., Exhibit P.*

Based on the above, members of the New York City Police Department were obligated to investigate a complaint from Starbucks about a suspicious device that was left in the store on June 25, 2006. Although the device was ultimately determined to not be an actual bomb, that did not end the inquiry, as N.Y. Penal Law. § 240.62 prohibits and individual from "placing what appears to be a bomb, destructive device, explosive or hazardous substance, but is, in fact, an inoperative facsimile or imitation of such a bomb, destructive device, explosive or hazardous substance in a public place under circumstances in which it is likely to cause public alarm or inconvenience." N.Y. Penal Law § 240.62. In light of the elements of N.Y. Penal Law. § 240.62, it was objectively reasonable for Detective Ryan to interview plaintiff in order to determine whether plaintiff left what appeared to be an explosive device in Starbucks with the intent to cause public alarm.

Therefore, because it was objectively reasonable for Detective Ryan to arrest and detain plaintiff for a violation of N.Y. Penal Law § 240.62, he is entitled to qualified immunity and plaintiff's false arrest claim must be dismissed.

**C.     Plaintiff Does Not Set Forth A Viable Claim for Intentional Infliction Of Emotional Distress.**

Plaintiff's claim for intentional infliction of emotional distress ("IIED") must be dismissed. "Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Moore, et al. v. City of New York, 219 F. Supp. 2d 335 (E.D.N.Y. 2002) (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) and citing Howell v. New York Post Co., 81 N.Y.2d 115, 121; 596 N.Y.S.2d 350 (1993)).

Causes of action for intentional infliction of emotional distress require conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Rooney v. Wittich, 21 F. Supp. 2d 273 (S.D.N.Y. 1998) (quoting Harville v. Lowville Central School Dist., 245 A.D.2d 1106; 667 N.Y.S.2d 175, 176 (N.Y. App. Div. 4th Dept. 3 1997)). Such is not the case here.

In addition, "intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort," when traditional tort remedies are unavailable. Moore, et al. v. City of New York, 219 F. Supp. 2d at 339 (citing EEOC v. Die Fliedermaus L.L.C., 77 F. Supp. 2d 460, 472 (S.D.N.Y.1999) (quoting McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 256 A.D.2d 269, 682 N.Y.S.2d 167, 169 (1st Dept. 1998)). Accordingly, "no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within

20

the ambit of traditional tort liability." <u>Moore</u>, 219 F. Supp. 2d at 339 (quoting <u>Hansel v.</u> <u>Sheridan</u>, 991 F. Supp. 69, 75 (N.D.N.Y. 1998)).

First, plaintiff wholly fails to establish that Detective Ryan's conduct in interviewing him at the 19th precinct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Rooney v. Wittich</u>, 21 F. Supp. 2d 273 (S.D.N.Y. 1998). Therefore, he fails to meet the threshold requirement for the maintenance of an IIED claim. Further, because plaintiff's claim for intentional infliction of emotional distress overlaps with the traditional tort claims of false arrest and excessive force, he cannot maintain a claim for intentional infliction of emotional distress.

Thus, plaintiff's purported claim for intentional infliction of emotional distress fails as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants Detective Thomas Ryan and the City Of New York respectfully request that the Court grant their motion for judgment on the pleadings or, in the alternative, for summary judgment on all of the claims in the complaint, together with such costs, fees and further relief as the Court deems just and proper.

Dated:      New York, New York
            May 1, 2008

                               Respectfully Submitted
                               MICHAEL A. CARDOZO
                               Corporation Counsel of the
                                 City of New York
                               Attorney for Defendants City of New York and
                               Thomas Ryan
                               100 Church Street
                               New York, New York 10007
                               (212) 788-9567

By:                _____
                               Suzette Corinne Rivera (SR 4272)
                               Assistant Corporation Counsel