UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

ALEXANDER ALHOVSKY,                                    Civil Action

                                      Plaintiff,       07 CIV 7628 (CM)

                    v.

THOMAS RYAN, NEW YORK CITY POLICE            **PLAINTIFF'S LOCAL**
DEPARTMENT DETECTIVES STEVEN GOETZ AND       **RULE 56.1 RESPONSE**
JOSE M. ALFONSO, NEW YORK CITY POLICE
DEPARTMENT OFFICERS SGT. PANUCCIO, PAUL,
MORNZANI AND GAVEN, JACK T. LINN, STEVE
SIMON, RAY BROWN, BARBARA JOYNER, the NEW
YORK CITY DEPARTMENT OF PARKS AND
RECREATION, and the CITY OF NEW YORK,

                                      Defendants.

-----------------------------------------------------------------------x

       Plaintiff Alexander Alhovsky, by his attorneys the Erlanger Law Firm PLLC, submits this

statement of facts in response to defendant City of New York ("the City"), April 29, 2008 Local

Rule 56.1 Statement and in support of their opposition to the City's Rule 56 motion on the

grounds that there exist genuine issues of fact to be tried.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## 4/29/08 STATEMENT OF UNDISPUTED FACTS

       General objection.  Defendant City's motion was to be based on the pleadings and

plaintiff's deposition according this Court's rules for making a qualified immunity motion.  First,

the City did not ask for or receive the Court's permission to make a non-qualified immunity

FRCP 56 motion.  Second, the documents upon which defendants rely – *Rivera* Exs. D-G and

I-R, including the Affidavit of defendant Thomas Ryan ("Ryan") – go beyond the scope of the

pleadings.  Defendants have sandbagged Alhovsky by using discoverable documents and

information in their possession.  At the same time, Alhovsky, by this Court's individual rules,

has been prevented from making inquiries into that discovery and acquiring additional discovery

which would assist him in opposing the City's the non-qualified immunity portion of its motion.

Although Alhovsky must rely on the Exhibits to the Rivera Declaration to oppose defendants' motion, they have not been properly authenticated because Ryan is not the records' custodian.

1.  Plaintiff has no position on Statement 1.

2.  Plaintiff agrees with Statement 2.

3.   Plaintiff agrees with Statement 3.

4.  Plaintiff agrees with Statement 4 except that it appears from the blurry color photographs produced by the City from the Starbucks's security recording that the Majiloon balloon pump ("balloon pump") was inadvertently left by him on a countertop. *See Rivera* Ex.Q. The security recording itself has not been reviewed by plaintiff's counsel and plaintiff cannot yet subpoena the recording from Starbucks under the stay of discovery per this Court's Individual Rules 3.C.

5.  Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement.

6.  Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement.

7.  Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement.

8.  Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement.  But plaintiff agrees that his balloon pump was not an explosive device and that New York City Police Department ("NYPD" officers) had

determined as much.

9. Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement. Plaintiff further assets that the term "hoax device" has no legal significance and its use is unique to the NYPD bomb squad. *See Rivera* Exs. E&G.

10. This is not a factual statement to which a reply is required. Plaintiff refers the Court to the words of the statute as contained in McKinney's.

11. Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement.

12. Plaintiff agrees that he was at Starbucks at Third Avenue and 66th Street in Manhattan ("Starbucks") on or about June 25, 2006 and had inadvertently left his balloon pump there. *Erlanger* Ex.1 at 92-97.

13. Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement.

14. Plaintiff disagrees that the balloon pump, removed from its ripped fanny pack as depicted in *Rivera* Ex.R was how he had left it in Starbucks on or about June 25, 2006; the black fanny pack with protruding air hose wrapped in colorful "rainbow" tape made it appear funny and attractive, not dangerous. *Erlanger* Ex.1 at 85-86, 88-92; *see Rivera* Decl. Ex.R. Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to further agree or disagree with this statement

15. Based on his own perception, plaintiff agrees that the NYPD set up surveillance in around Starbucks on or about June 28, 2006. *See Erlanger* Ex.1 at 100-103, *106*. Plaintiff disagrees that the balloon pump was a hoax device; it was a fully functioning balloon pump. *Id*.

at 85-86, 88-92.  Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to further agree or disagree with this statement

16.   Plaintiff believes that he rode his bicycle past the Starbucks on or about June 28, 2006.  Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to further agree or disagree with this statement

17.   Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement.

18.   Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement.

19.   Plaintiff agrees that he was arrested in the vicinity of First Avenue. *Erlanger* Ex.1 at 100-103, 106.  Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to further agree or disagree with this statement.  But based on the documents produced by the City, plaintiff added named defendants NYPD Officers Paul, Mornzani, and Gaven.

20.   Plaintiff disagrees with this statement.  At the time of his arrest, he had a black fanny pack around his waist that completely contained another balloon pump; the inflation hose and nozzle protruded from the fanny pack. *Erlanger* Ex.1 at 100, 109.

21.   Plaintiff has not been permitted by the Court's individual rules to take Ryan's deposition to be able to agree or disagree with this statement.

22.   Plaintiff admits that he was handcuffed and in the custody of NYPD officers. *Erlanger* Ex.1 at 112, 127.  Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to further agree or disagree with this statement.

23.   Plaintiff only admits that he was brought to the 19th Precinct and adds that he had no

4

clue why he had been brought there. *See Erlanger* Ex. 1 at 128-129. Plaintiff further adds that it

was not until he was escorted from the Precinct and brought to his apartment that he even

appreciated that the NYPD had found the balloon pump at Starbucks and that this was one of the

devices that they were talking about; they never mentioned the word "bomb." *See id*. at 121.

Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to

further agree or disagree with this statement.

24. Plaintiff admits that at the 19th Precinct he was brought into a room and adds that

the room had a table and glass all around that he could not see through. *Erlanger* Ex.1 at 114-

115, 129. He admits that the handcuffs were removed but he cannot remember exactly when. *Id.*

at 127-128.

25. Plaintiff admits only that he was eventually asked two questions by one NYPD

Detective, who he believes was Ryan (the good cop), and by another person who he believes was

an agent from a three-letter agency ("the agent"). *Erlanger* at 115-118. Plaintiff adds that until

the agent arrived, Ryan and the bad cop only cursed and barked instructions at him and did not

answer any questions. *Id.* at 115-117.

26. Plaintiff admits that, upon his request, he was allowed access to the internet at the

19th Precinct and directed Ryan and the agent to the Majiloon website. *Erlanger* Ex.1 at 118-

119. Plaintiff has not been permitted by the Court to take Ryan's deposition to be able to agree

or disagree with the portion of the statement when the NYPD or the agent determined that the

balloon pump, was in fact, a fully operational device used to inflate balloons.

27. Under the stay of discovery, plaintiff has not been able to conduct the discovery to be

able to agree or disagree with this statement.

28.   Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement, but he believes it to be true.

29.   Under the stay of discovery, plaintiff has not been able to conduct the discovery to be able to agree or disagree with this statement, but he believes it to be true.

### PLAINTIFF'S ADDITIONAL MATERIAL FACTS IN OPPOSITION

1. Alhovsky absent-mindedly left the black fanny pack containing the balloon pump on the countertop at the Starbucks at Third Avenue and 66th Street ("the Starbucks"). *Erlanger* Ex.1 at 93; *Rivera* Ex.Q.

2.   For the <u>four</u> <u>hours</u> between 6:18 p.m. and about 10:10 p.m., the balloon pump in its fanny pack did not cause alarm or inconvenience to any Starbucks customer or employee. *See Rivera Exs. D-G, I-M & Q.*

3.   During the evening of June 25, three days before Alhovsky's arrest, NYPD detectives reviewed a security recording of the store. *See  Rivera Ex. D.*  The time-stamped, still photographs of the recording, show Alhovsky in his multi-colored tie-died outfit ordering coffee, drinking it in a relaxed manner at a corner counter while looking out the window, and nonchalantly leaving the Starbucks about 13 minutes later. *Rivera Ex.Q.*

4.   Over the course of the thirteen minute security recording, the NYPD detectives observed a slightly built, nonthreatening person. *Rivera Ex.Q.*

5.   During the evening of June 25 (three days before Alhovsky's arrest) the NYPD knew from questioning the Starbucks Shift Manager that Alhovsky was a nonthreatening, frequent customer, who came to the Starbucks two to three times a week, and on each occasion ordered a beverage, stayed a while, and then left. *Erlanger* Ex.2; *see Rivera* Exs.D&F.

6

6.   During the evening of June 25 (three days before Alhovsky's arrest) the NYPD Bomb Squad quickly determined that the balloon pump did not contain explosives. *Rivera* Ex.G.

7.   During the evening of June 25 (three days before the arrest), before testing the balloon bump, the Bomb Squad had incapacitated it by spraying a blue substance on two terminals to impede the flow of electricity from the battery. *Erlanger* Ex.1 at 14-15; *see Rivera* Ex.E & R (blue-sprayed portions of balloon pump). Thereafter, the Bomb Squad was unable to determine whether the balloon pump was an operating device or an inoperative facsimile or imitation of a bomb.

8.   During the evening of June 25, three days before Alhovsky's arrest, the NYPD knew that there had never been problems or any kind of threat directed at the Starbucks, *Rivera Ex.F; see Rivera Ex.D.*  The NYPD also knew that no threats had been directed at any other building or business in the surrounding area at or around June 25. *See Rivera* Exs. D-G, I-M.

9.   The NYPD documents completed by the lead investigative detective from the 19th Precinct, Steven Goetz, do not show an investigation for the crime of "placing a false bomb." Rather, *prior to* Alhovsky's arrest, the 19th Precinct detectives were investigating a "Suspicious Device" *Rivera* Exs. D, I-K.

10.  Between June 25 and June 28, there were no communications between Alhovsky and the NYPD.  *Erlanger* Ex.1 at 98; *see Rivera* Exs.D-G, I-M.

11.  On or about June 28, after working on Wallace Walk in Central Park, Alhovsky was riding his bike down 67th or 66th Street toward his apartment.  A black fanny pack, with another balloon pump inside, was strapped around his waist and his artist's portfolio bag was strapped to his back. *Erlanger* Ex. 1 at 98-102.

7

12.    As Alhovsky approached First Avenue, he noticed two cops on bicycles screaming at or addressing him. *Id.* at 102-103.  One officer had a gun in his hand.  No officer yelled "stop" or identified himself, but Alhovsky slowed down. *Id.* at 105-106.

13.    Alhovsky was knocked off his bike.  Three police officers jumped Alhovsky and at least two guns were pointed at his  face.  One of the officers screamed at Alhovsky that he was going to "blow his fucking head off" while he was on the ground with an officer's knee in his face.  One or more officers pulled Alhovsky up by his hair and slammed his face against the window of Chirping Chicken. *Id.* at 102-105, 112.

14.    Alhovsky's hands were handcuffed behind his back. *Id.* at 127.

15.    Alhovsky's pants were down around his ankles and a portion of his underwear was down, exposing him to the kids in the playground across the street.  The officers were kicking him and his pants were dragging on the ground as they brought him to a police car. *Id.* at 113-114.

16.    Alhovsky did whatever the police officers asked him to do.  *Id.* at 127.

17.    Alhovsky was left alone in the rear of the police car, without air conditioning, for 40 minutes to an hour, a "long exhausting time." *Id.* at 112, 114.

18.     No police officer spoke with Alhovsky, and when Alhovsky made inquiries, he was cursed out by police officers and told to "shut the fuck up." *Id.* at 112, 114.

19.    The NYPD surrounded Alhovsky's fanny pack, which had been removed from his waist, and portfolio, both of which were on the sidewalk, with "yellow tape." *Id.* at 112, 114.

20.    Alhovsky was brought to the 19th Precinct and placed in an isolation room with a table and lots of glass. *Id.* at 115, 129.  His pockets were emptied and shoe laces removed. *Id.* at

129-130.

21.   Alhovsky was locked in alone for "a very, very long time." *Id.* at 129-130.

22.   Two detectives playing a "good cop, bad cop" routine with Alhovsky; one was very rude, mean (presumably Goetz) and Ryan was "more sensible."  Neither detective would disclose the reason for his arrest.  Alhovsky asked Goetz for a hint, like was it murder or rape and Goetz told him, "you're in far deeper shit than this, buddy, and you're going in for life. *Id.* at 115-116.

23.   One of the detectives came into the isolation room and told Alhovsky that they were expecting a "bigger fish" from a three-letter agency, but other than this, they told him nothing and totally ignored his attempts to communicate. *Id.* at 116-117.

24.    At some point man dressed in a suit, with a gold badge, not a police badge, came into the room and asked Alhovsky two questions, "what is this and where did you get it?" Alhovsky simply told him that it is a "balloon pump" and referred him to the (Majiloon) website where he could buy it. *Id.* at 117-118.

25.   The detectives and three-letter agency agent started looking for an internet accessible computer at the Precinct.  Once one was found one, they accessed the Majiloon website, and saw the balloon pump and its construction "vividly" depicted. *Id.* at 117-118.

26.   After Alhovsky directed the NYPD to the Majiloon website, NYPD immediately knew, without more, that the balloon pump was not an inoperable facsimile of a bomb or an imitation bomb. *See Rivera* Ex.L.

27.   After Alhovsky directed the NYPD to the Majiloon website, NYPD immediately knew without more, that he had not left the balloon pump at the Starbucks to cause public alarm or inconvenience. *See Rivera* Ex.L.

9

28.   After viewing the balloon pump on the Majiloon website, Alhovsky was placed back into the isolation room for another period of time. *Erlanger* Ex.1 at 120-121.

29.   Ryan asked Alhovsky to sign a waiver to allow the NYPD to search his apartment. He told Alhovsky that if he did not sign, NYPD would get it anyhow, it would take longer, and Alhovsky would be completely exhausted by that time; Alhovsky signed it. *Id.* at 120-121.

30.   Alhovsky was never told at any time by the NYPD that they believed that a bomb was left a Starbucks. *Id.* at 121.

31.   Neither the agent nor the NYPD ever told Alhovsky why he was being asked about the balloon pump. *Id.* at 121.

32.   When Alhovsky was escorted from the 19th Precinct by the NYPD, it was dark outside.  After they arrived at his apartment building, at about 10 p.m., he was told to wait down a flight of stairs from his apartment while it was searched. *Id.* at 131-133.

33.   Two police officers remained with Alhovsky at all times.  The search lasted for about an hour.  It was only after all of this that Alhovsky was allowed to go into his apartment alone. *Id.* at 131-133.

Dated:  New York, New York.
        June 9, 2008

                                    ERLANGER LAW FIRM PLLC
                                    Attorneys for Plaintiff

                                    By: s/ Robert K. Erlanger
                                        Robert K. Erlanger (RE-0886)

                                    100 Fifth Avenue, 14th floor
                                    New York, New York 10011-6903
                                    (212) 686-8045